IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | | |
|---|---|---|
| ERIK PETERSON, | ) | Civil No. 10-138-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Rory Linerud
      Attorney at Law
      P.O. Box 1105
      Salem, OR 97308

           Attorney for Plaintiff


      Dwight C. Holton, U. S. Attorney
      Adrian L. Brown, Asst. U.S. Attorney
      1000 S.W. Third Avenue, Suite 600
      Portland, OR 97204-2902

Richard Rodriguez
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Erik Peterson brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Insurance Benefits. Plaintiff seeks an Order reversing the Commissioner's decision and remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed an application for DIB on September 22, 2004, alleging that he had been disabled since May 21, 2003. After the application had been denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). The first hearing, held before ALJ Madden, Jr., could not be completed, and was continued and rescheduled to September 17, 2007. Plaintiff failed to appear at that hearing, and it was rescheduled to January 16, 2008. After plaintiff again failed to appear at the rescheduled hearing, the ALJ dismissed his case.

In an Order dated April 30, 2008, the Appeals Council vacated the ALJ's Order of dismissal and remanded the action to the ALJ, who scheduled a hearing for August 18, 2009.

Plaintiff; Linda Kay Forbes, plaintiff's mother; and Jeffrey Tittelfitiz, a Vocational Expert (VE); testified at the hearing.

In a decision dated September 15, 2009, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act (the Act). That decision became the final decision of the Commissioner on December 9, 2009, when the Appeals Council denied plaintiff's request for review. In the present action, plaintiff seeks review of that decision.

## **Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

FINDINGS AND RECOMMENDATION - 4

**Factual Background**

Plaintiff was born on November 1, 1980, and was 28 years old at the time of the ALJ's decision.  Plaintiff has a high school education, and has worked as a sales clerk, a fast-foods worker, a gas station attendant, a cashier, a grocery clerk, and a deli clerk.

Plaintiff alleges disability based upon an inability to follow directions, chest pains, a heart condition which requires him to take frequent breaks, an inability to focus and maintain interest when performing repetitive activities, and an inability to retain employment because of failure to follow instructions.

**Medical Record**

Plaintiff has been diagnosed with internal derangement of the right knee; gastroenteritis; Marfan's syndrome; anxiety disorder; depression, moderate, recurrent; tinea cruris; pneumonia; lumbar strain; thoracic strain; neck strain; bilateral trapezius strain; ceruminosis; Marfan's enlarged aorta; fibromyalgia; post-traumatic stress disorder; depressive disorder; dentalgia; left knee contusion; septic olecranon bursitis, right elbow; right lumbosacral radiculitis; insomnia, and sciatica.

**Hearing Testimony**

1. **Plaintiff's testimony**

Plaintiff testified that he has problems following directions, has a heart condition that causes chest pain and requires him to take frequent breaks, has to be cued frequently in order to complete tasks, loses focus and attention quickly when attempting to perform repetitive tasks, and has been fired from almost every job he has had.

FINDINGS AND RECOMMENDATION - 5

2. **Linda Forbes' testimony**

Linda Forbes, plaintiff's mother, testified that plaintiff has trouble following simple commands and staying on task, has to be cued frequently in order to complete even those tasks that he has performed previously, has difficulty with comprehension, tires easily because of Marfan's syndrome, needs to take breaks every hour or two, and could not live on his own because he does not understand finances and could not "follow recipes or directions on things to cook for himself." Ms. Forbes testified that, though he was 28 years old, he was emotionally and mentally "a lot like a 10 to 12 year old."

3. **Vocational Expert's testimony**

In his vocational hypothetical, the ALJ described an individual with plaintiff's age and education, who could occasionally lift 20 pounds and frequently lift 10 pounds, could stand and walk 6 hours and could sit 6 hours during an 8-hour workday, should avoid hazards such as heights and dangerous moving machinery, could understand, remember and carry out short, simple, instructions, should not work in close coordination with or in close proximity to more than one or two others, and should not have "frequent unstructured contact with the general public." The ALJ stated that this "boils down to . . . one-two-three step simple repetitive tasks." He added that the individual described could "be around other people," but should "actually do the work themselves."

The VE testified that the described individual could not perform plaintiff's past work, but could work as a "marker II," a packing line worker, or a document sorter.

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the date of the alleged onset of his disability.

At the second step, the ALJ found that plaintiff's severe impairments included Marfan's syndrome, depressive disorder, post-traumatic stress disorder, and drug dependence (in remission).

At the third step, the ALJ found that, singly or in combination, plaintiff's severe impairments did not meet or equal an impairment in the "listings," 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ next determined that plaintiff retained the functional capacity to perform "light" work, with the following limitations:

> He can perform work that does not require more than 6 hours of sitting or 6 hours of standing/walking in an 8-hour workday; he can also perform work that avoids concentrated exposure to hazards such as unprotected heights or moving machinery; finally he can perform work that involves short, simple instructions that does not involve frequent, unstructured contact with the general public.

At the fourth step of his analysis, the ALJ found that plaintiff could not perform his past relevant work.

At the fifth step, the ALJ found that plaintiff could work as a "marker II," a packing line worker, and a document sorter. Based upon this conclusion, he found that plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted

FINDINGS AND RECOMMENDATION - 7

or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her

disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

(1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan,

924 F.2d 841, 849 (9th Cir. 1991).

       The district court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record as a

whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it

supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771,

772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if

"the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at

1039-40.


**<u>Discussion</u>**

       Plaintiff contends that the ALJ erred in relying on erroneous testimony from the

vocational expert, erred in assessing his residual functional capacity, and erred in finding

that his combined severe impairments did not meet or equal a "listed" impairment.


FINDINGS AND RECOMMENDATION - 8

1. **<u>VE's testimony</u>**

Plaintiff contends that the ALJ erred in relying on the testimony of the VE, because that testimony was based upon a vocational hypothetical that was ambiguous and unclear in two important respects. His first challenge is based upon the portion of the ALJ's vocational hypothetical which provided that

> Due to medical condition hazards such as heights, dangerous moving machinery should be, they indicate should avoid concentrated exposure. Better just avoid that.

Plaintiff contends that this statement was ambiguous, and that the VE's testimony that plaintiff could perform the functions of a marker or a document sorter showed that the VE misunderstood the limitation the ALJ sought to impose. Plaintiff notes that the Dictionary of Occupational Titles (DOT) states that the marker II position involves use of dangerous tools such as metal punches, hammers, and branding irons, and that the document preparer position involves use of paper cutters and razor knives. Plaintiff's second challenge concerns the ALJ's instruction that the VE should exclude work in close coordination with or in close proximity to "more than one or two others," and to the ALJ's assertion that this "boiled down to" having a "task" that individuals could perform by themselves, and that such individuals "can be around other people, but actually do the work themselves." Plaintiff asserts that he has "absolute barriers to work because of his proximity to others and when working in close coordination with them," and that "it is unclear what the expert utilized when answering the hypothetical . . . ." Plaintiff contends that the packing line worker position is unsuitable "because the person is part of a crew," and that the limitations on working in the proximity of or in close coordination with others "would be inconsistent with all occupations because

they all require the individual to be able to take instructions and are helping other people, (co-workers)."

These arguments fail. The ALJ's instruction concerning hazards was not unclear, and simply required the VE to eliminate positions that involved any exposure to "hazards," described as "machinery, heights, etc." in the residual physical functional capacity assessment completed by the state agency non-examining physicians. This limitation was more restrictive than the limitations assessed by the state agency non-examining physicians, who simply indicated that plaintiff should "avoid concentrated exposure" to hazards. Plaintiff cannot complain of the ALJ's imposition of limitations that are more strict than those set out in doctors' RFC assessments. See Johnson v. Shalala, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995). Further, he has not shown that the hazards he cites in the DOT description of the marker II and document preparer positions are the kind of hazards implicated by the reference to "machinery, heights, etc." in the residual functional capacity assessment. Social Security Ruling (SSR) 96-9p describes hazards as including "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals. SSR-96-9p, WL 374185 at *9. The DOT identifies these hazards as "not present" in the marker II position. DOT 920.687-126. The VE testified that the marker II position was consistent with the ALJ's vocational hypothetical, and that, in his experience, the jobs he cited were performed as described in the DOT. The ALJ did not err in relying on the VE's testimony. However, even if plaintiff were correct and the other positions that the ALJ found were appropriate were eliminated, establishing that the marker II position was within plaintiff's residual

functional capacity, and that those jobs exist in significant numbers in the national economy, would satisfy the Commissioner's burden at step five.

The limitation that the ALJ imposed in the hypothetical concerning work with others was based upon the assessment of state agency non-examining psychologist Frank Lahman, Ph.D., who opined that plaintiff should not work "in close proximity to more than one or two others due to irritability and panic." Nothing in the record indicates that the VE had difficulty understanding the limitation on contact that the ALJ imposed, and there is no support for plaintiff's assertion that an individual who cannot work near others is barred from all occupations. There is also no support for plaintiff's contention that the VE misunderstood either the ALJ's hypothetical in this respect or misunderstood the nature of the packing line position. Instead, it appears that the VE simply opined that workers on a typical packing line worked no more closely than was permitted in the ALJ's hypothetical, and concluded that such workers in effect "just perform by themselves." The ALJ's hypothetical was based upon medical assumptions that were supported by the medical record, and the VE testified that packing line work "could involve like taking potato chips and putting them in a box, and sealing the box up and sending it down the line . . . ." The VE further asserted that his testimony was consistent with the way the work was described in the DOT. Under these circumstances, plaintiff has not shown that the ALJ's hypothetical was erroneous or ambiguous, that the VE did not understand and accurately apply the hypothetical, or that the VE erred in concluding that the packing line position met the requirements of the hypothetical.

Plaintiff also contends that the document preparer position identified by the VE was inconsistent with the ALJ's vocational hypothetical, which restricted plaintiff to

FINDINGS AND RECOMMENDATION - 11

"one-two-three step simple repetitive tasks."  Plaintiff correctly notes that the DOT states that
the Document Preparer, Microfilming position involves "performing a variety of duties."
However, as the Commissioner correctly notes, the DOT describes "maximum requirements
of occupations as generally performed, not the range of requirements of a particular job as it
is performed in specific settings."  SSR 00-4p, 2000 WL 645963.  Here, the VE stated that a
document sorter position involves "taking a file apart, putting it through a scanner, and then
reassembling the file."  A VE is a legitimate source of information concerning the tasks
performed in various positions, 20 C.F.R. § 404.1566(e), and the ALJ did not err in relying
on the VE's testimony that an individual with the residual functional capacity he assessed
could perform the duties of the document preparer position.

2. __Assessment of plaintiff's residual functional capacity__

Plaintiff correctly notes that, in the residual functional capacity assessment set out in
his decision, the ALJ failed to specify the limitation on working in coordination with or in
close proximity to no more than one or two people included in the assessment of Dr. Lahman,
a state non-examining psychologist whose assessment the ALJ accorded "great weight."
Plaintiff contends that the ALJ's failure to include this restriction in his decision was
significant because "all of the occupations found to be suitable are inconsistent with an
individual having difficulty around co-workers."  He argues that the Packing Line position is
particularly inappropriate, because the DOT identifies that position as requiring an individual
to work as a "member of [a] conveyor line crew."

The Commissioner concedes that the ALJ erred in failing to include the "proximity"
limitation in his formal decision, but contends that this error was harmless.  I agree.  There is

no question that the ALJ included a limitation on ability to work in proximity to co-workers

in the vocational hypothetical he posed to the VE.  The ALJ noted that the described

individual "should not work in close coordination or in close proximity to more than one or

two others," and described Dr. Lahman's limitation as meaning that the "individual should

have [a] task that they just perform by themselves.  They can be around other people, but

actually do the work themselves."  This limitation adequately described the limitation on

contact with co-workers set out in Dr. Lahman's assessment.  There is no basis for concluding

that the VE was either unaware of this "proximity" restriction, or that the VE misunderstood

or misapplied the restriction in his assessment of suitable positions, including the packing

line position.  Under these circumstances, omission in the formal record of a limitation that

was included in the vocational hypothetical constitutes harmless error.  See Stout v.

Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2009) (errors nonprejudicial to claimant or

irrelevant to ALJ's ultimate disability conclusion harmless).


3. **ALJ's conclusion that plaintiff's impairments did not meet or equal listed**

**impairment**

Plaintiff contends that the ALJ erred in concluding that his Marfan syndrome,

combined with his back pain, did not meet or equal one of the impairments in the "listings"

that presumptively establishes disability.  See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20

C.F.R. pt. 404, subpt. P, app.1.  Plaintiff contends that the ALJ's assertion that "the evidence

of record does not satisfy the criteria of section 1.04 (disorders of the spine) since there is no

evidence of nerve root compression . . . ." was incorrect.  He argues that he "has been

diagnosed with having right lumbosacral radiculitis and sciatica, which are both consistent

FINDINGS AND RECOMMENDATION - 13

with nerve compression," and contends that the ALJ should have sought a medical opinion as to whether his impairments met or equaled a listed impairment.  Plaintiff contends that the ALJ "failed to provide a justifiable rationale to support his conclusion that plaintiff did not meet or equal the listed impairments."

I disagree.  As the Commissioner correctly observes, a claimant has the burden or producing medical evidence that establishes that an impairment or impairments meets or equals an impairment in the listings.  E.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  Impairments must be established through medical evidence, which consists of signs, symptoms, and laboratory findings.  20 C.F.R. § 404.1508.  Plaintiff has cited no medical authority supporting his assertion that right lumbosacral radiculitis and sciatica are "consistent with nerve root compression," and the record before the ALJ did not include objective medical evidence, such as a positive MRI, establishing nerve root compression.  In March, 2005, plaintiff was diagnosed with lumbosacral sprain and right lumbosacral radiculitis, and Vicodin was prescribed for pain.  Back problems are not raised again in the medical record until March, 2008, some three years later, when plaintiff complained of back pain, was diagnosed with sciatica, and pain medication was prescribed.  This medical record is not sufficient to establish that plaintiff has nerve root compression, and plaintiff has not met his burden of establishing that he has an impairment that meets or equals a listed impairment.


## Conclusion

A judgment should be entered affirming the Commissioner's decision and dismissing this action with prejudice.


FINDINGS AND RECOMMENDATION - 14

**<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due March 21, 2011.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a  copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 2nd day of March, 2011.


/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 15